William Lowe for Petitioner's Shuler. In this case, there are a large number of issues. One thing that I want to clarify right off the bat is it appears to me that... Could you speak a little louder, counsel? I'm sorry. Thank you. Release should be granted outright on this record. There can't be any confidence in the reliability of the verdict in this case. The instructions were inadequate. The publicity in this case, the bias of the jury, and the ineffective assistance of counsel as to the instructions, as to the voir dire and challenges, basically the denial of fundamental rights. There's no way that there can be any confidence that this is a reliable verdict. Counsel, of course, you're very much aware that we're here on habeas to the state of California, and the California Court of Appeal has examined these issues in great detail and has resolved them not necessarily to your satisfaction, but at least it increases the bar in terms of our review. What I've been trying to do in federal court since I filed the petition is to get the court to look at what the state court of appeal did and what actually happened in the trial court and realize that what the state court of appeal did in its conclusions are just not supported by the record in any way, shape, or form. They're not supported factually. They're not supported legally. They avoided substantial evidence of unconsciousness and instead ignored Southern California law as to what constitutes unconsciousness, essentially deciding that if Petitioner was moving, then he wasn't unconscious. They found actions as effectively constituting conscious acts in a manner that is inconsistent with California law. California law does not require immobility. It allows for the defense of unconsciousness because people can act unconsciously, and that is what happened, and at least there is substantial evidence of that happening in this case. They ignored substantial evidence, the .38 blood alcohol, near fatal levels, clearly indicative of unconsciousness. In fact, one of the points made by the defense expert at the venue hearing was that the one exculpatory article that he found said that it may be to Shuler's benefit that he was at such a high blood alcohol level because that indicates unconsciousness. The venue expert got that. The defense attorney had no clue. The court of appeal and the district court similarly did not address that point. I mean, before he ever left the bar, he had four double whiskeys and four beers. He was wobbling. He was incoherent. Okay. But I gather what you're suggesting is that the jury instruction was inadequate or nonexistent. Well, what the problem that has come so far is that I've been trying to get the court to recognize that there is substantial evidence of unconsciousness. The state court of appeal rejected that. The district court rejected that. That conclusion is not supported by this record. There is substantial evidence of unconsciousness. All right. But are you talking about California law in this context? In terms of what had to be proved to justify a verdict, in this case beyond a reasonable doubt, the people had the burden. Once the evidence of unconsciousness was presented, the people had the burden of proving beyond a reasonable doubt that he was conscious, and there had to be instructions defined for the jury the factual issues which they had to determine. All right. They got nothing of that. Okay. But the problem we have, of course, is that we're not in direct review. Unlike the court of appeal of the State of California, we're here on a habeas challenge, and the question is whether there is a manifest deprivation of a federally protected constitutional right.  Right. And the basic constitutional right is the right to have a jury verdict which determines all the facts necessary to that conviction. In this case, they didn't get instructions which presented them with a factual question they had to answer and, in fact, led them away from it to irrelevant considerations. Well, what is the jury was instructed that a mental state was necessary. Correct. That is, that the state had to prove a certain mental state, and that mental state was what? Danger, knowledge of danger to life and conscious disregard of human life? Correct. Now, how can a jury find that somebody is conscious, that is, has a conscious disregard of human life as part of the state's burden of proof? And then we have out here this other concept as a defense of unconsciousness. Now, if he's unconscious, what is he unconscious of? Disregard of human, the conscious disregard of human life? Why are, and are you telling us that California law has a discreet defense of unconsciousness in the face of a charge that somebody consciously committed an act? In this case, yes. Well, wait, wait, wait, wait. I'd like for you to focus on my question. Yes. Are you saying that California has some doctrine of law that says, in addition to the state having to prove that somebody is in conscious disregard of human life, now, members of the jury, I want you to understand there's another defense here under California law that is labeled unconsciousness. Okay. There is no specific, put in that context, no, there isn't a separate, but in this case. Well, wait a minute. Now, I'll get to this. You keep saying the defense of unconsciousness. Now, the defense of unconsciousness is significant under California law only in this case? Is that what you're saying? In this case, given the peculiar application of murder, secondary murder to a drunk driving homicide. In that case, in Watson and in other cases, the California Supreme Court has focused in part upon the decision to drive. And in this case, there is evidence that his decision to drive was made while unconscious. Now, the instructions did not direct the jury to consider that as to whether or not that was the point that they were determining the mental state. Instead, it focused them on the decision to drink, his knowledge of the effects of alcohol on his body. Essentially, they, in this case, could have found that he was unconscious in the bar, and from then on, which would have been inadequate to sustain a verdict of murder under California law. But nothing in the instructions told them what to do with it. They were told to consider the voluntariness of the intoxication, which is irrelevant, except if unconsciousness was brought up as a partial defense to the element of malice. The point is, there is evidence, there is law about unconsciousness as negating that conscious disregard, not as a defense to the entire charge, but just reducing it to manslaughter. They didn't get that. Instead, they were given instructions which essentially told them that they should look at his decision to drink, and that he, they inferred that he had knowledge of the effects of alcohol on his body, which essentially allowed them to find that conscious disregard in his decision to drink with knowledge that he might black out and do something. Now, that is not consistent with California law and the requirements under Watson for second-degree murder in this type of situation. It's a specific case. It's very fact-specific in terms of the law of California, and the State Court of Appeal refused to address that point, and the District Court has refused to address that point. They have ignored the evidence of unconsciousness, and they have misconstrued the instructions that were given. Well, now, the question that I started focusing on is the burden of the state to prove a conscious disregard for human life as opposed to the simple word unconscious. Correct. It's a separate question from when the jury is to focus. Correct. And your argument, your separate argument is that the jury was somehow misled into focusing on the question of whether or not it constituted a conscious disregard of human life by him ever choosing, while he's stone sober, to take the first drink. Correct. Is that right? Essentially, that's the point. And those are two separate issues. Well, I think in this case, they merge, because the effect of the fact that unconsciousness was presented in the evidence but not in the instructions or in the arguments left the jury completely unclear on what they had to find. Yeah. And if they found unconsciousness under the facts as I'm presenting them, that it happened before he got anywhere near a car, they didn't know what to do with it. So the whole idea of unconsciousness is irrelevant to the issue of whether or not to take the first drink. Well, not under these instructions. They were told to look at the voluntariness. But conscious disregard of human life might not be, because if a person is so well informed that he knows that if he takes one drink or allows himself to be put under the influence to this extent, he's still going to be able to function and kill somebody. Now, that would make it pretty criminal to take the first drink if he was armed with all that knowledge. And there is no California case that has ever allowed that fact situation to constitute murder. It would be insufficient evidence to sustain the verdict in that case. Okay. Okay. So I guess then I'm to understand that you're arguing that effectively the way the case was presented, it made unconsciousness either in the form of conscious disregard or unconsciousness irrelevant if they're going to focus on the first drink. I think the problem with the instructions was that it did lead them to that. Now, that argument hasn't been very well articulated, has it? Oh, I apologize for that. I've been trying to articulate it for about 13 years. All right. That is the point of the whole thing. They both have to be taken together to understand that this jury didn't get instructions that allowed them to make a decision on the facts they were given. Okay. My notes indicate that defense counsel at trial did not request an instruction on unconsciousness. No, he didn't. And that's part of a separate point of ineffective assistance. Well, I mean, apart from the ineffective assistance issue, which I understand. But the point is that the jury had to be instructed upon the factual issues that it had to determine. And in this case, the combination of no instruction on unconsciousness and its relevance to this case and the erroneous instructions which were given made the jury instructions essentially unconstitutional, the verdict unreliable, as a determination of the facts necessary to a conviction. Notwithstanding the fact counsel never asked for it in the first place? I think in this case, yes. What troubles me a little bit, in a sense, we're sort of re-arguing this case from a totally different perspective than in which it was presented in the State court. And that is a major problem. I mean, the record in this case was not developed by a competent counsel. He basically missed the point time after time. But what is there, I think, establishes that this verdict cannot be considered as a reliable finding beyond a reasonable doubt of all those facts necessary to a conviction of second degree murder under these facts. Now, it's true that trial counsel didn't research the law. He didn't understand the relevance of unconsciousness. He didn't understand that it even applied in this case. He didn't investigate it further. He didn't. He put on an expert who basically testified that he was in a blackout and that there was a shutting down of cognition, of conscious thinking at a time in the bar before he ever got near a car, and didn't ask the question, do you mean he was unconscious? Trial counsel did not do a competent job of putting this on. That's a secondary point. And we never got an evidentiary hearing on that point. It's clear that he didn't research the law. His declaration says that. He didn't understand it. He didn't present it. He didn't ask for the proper instructions. He didn't object to the erroneous instructions. He didn't argue unconscious. He basically dropped the ball completely on what was probably the best defense to the element of malice that he could possibly have. He had evidence of it, but he didn't understand it. And he didn't present it. He didn't do it in any part of his presentation. And there's another point that the state court and the district court really only addressed a small portion of that ineffective assistance claim. They only really talked about his failure to request the instructions. It's not just that. He failed at every step to present a viable defense. He failed in every way that he could fail. Somehow his expert actually got the evidence in. He didn't understand it. I mean, the defense counsel didn't understand it, but it's there. The expert did. And, you know, in my opinion, the evidence in this record is sufficient to show ineffective assistance and prejudice, sufficient to require relief. But there has never been an evident jury hearing. We didn't get one in the state court. We hadn't gotten one in district court. We've never had an opportunity to do any discovery or investigation. There have been no funds to do anything in this case to present this fully. And if we don't get relief on this or the other claims directly on the record as it stands, it has to be remanded to the district court for an evidentiary. And I'd like to reserve my remand. Roberts. You may do so, counsel. Your question. One of your specific claims or contentions on appeal is that the district court did not review the entire record. Now, that complaint really is more in the form of an assertion that the district court did not have the entire record. Well, it's both. It didn't have the entire record, and it didn't review a portion. It didn't have the exhibits having to do with the change of venue motion, the articles and the radio broadcasts and the television broadcasts. Now, is that something that the state should have taken care of or should the petitioner have taken care of? As I understand the rules, the state should have. What I did is present it to the court in the pleadings, in a motion, at every step that it came up. The fact that I didn't have it and that I did a motion to expand the record, to get it included so that it could be reviewed, that was never ruled on. And the fact is it was never seen. You're saying that's the state's fault, that it wasn't produced? Well, whether it's the state's fault or my fault, the fact is that the district court needed to review that and didn't, and I did what I could do to get it. Well, but in an adversary system, the court doesn't decide a case that should have been presented. It decides the one that is presented. And if there's anything you want the court to decide, you better tell us and present it. And I did. Okay. And I presented it at every point that I did not have the exhibit and did not have access to the exhibit and that it needed to be included in the record. Nothing was ever done about that. Fair enough. I said it at every point. You have about a minute left, counsel, for your rebuttal. Thank you. Mr. Ott, is that correct? Yes. Good morning. Gregory Ott, a respondent. This case here is a real house of cards. Aside from the individual merit of each of these claims, which I'll get to, what we have is a lot of claims that, well, there wasn't sufficient evidence. Maybe there wasn't sufficient evidence of unconsciousness, or there was, but it arises to a true claim because of the instructional error. Well, these claims have to stand each on their own, and they just don't. There isn't a cumulative error claim here. These claims, it is true that I read from the briefs that there is a lot of reliance on the or assumption that claim A is going to be successful to make claim B successful, but each of these claims on their own just don't stand. On the unconsciousness instruction, this and each of the claims here has been reviewed by the state trial court, implicitly, expressly by the Court of Appeal, California, implicitly by the California Supreme Court, and by the district court. There isn't a conspiracy to ignore the record, ignore what's in the record. The record speaks for itself, and the bulk of it, especially on the unconsciousness, or all of it is before this court. In the excerpts, the principal aspect there is Dr. Globus's, I believe that's how you pronounce his name, testimony on unconsciousness. Before I get to that, I'd like to talk about what the courts have consistently pointed out that Shuler did. He was actively fleeing. He made eye contact with a young boy, stared at him. There were many instances of active thought, taking actions in response to other actions. He stopped and talked to a woman in a parking lot. He got in the car and drove. He drove for some time. As the state Court of Appeal found, this sort of active conduct over a period and responsive conduct is not evidence of unconsciousness. The state court's finding that this evidence doesn't meet the state's definition of unconsciousness is also a finding that is entitled to some deference, and that's also under pre-ADPA standards. Dr. Globus, if Dr. Globus was testifying about unconsciousness, he should have told somebody. He didn't, and he didn't not because counsel didn't understand it. Counsel understood it. Counsel says in his declaration, I didn't think a blackout was unconsciousness, and that's supported by the state court's finding as well. It's just not, at least not under Dr. Globus' testimony. Dr. Globus never said Shuler was unaware of what he was doing. He never said he shouldn't be responsible for what he was doing. He never said he was unconscious in any sense of the word. He used a couple of terms that appellants picked up on. I believe it was cognitive thought and something about conscious thinking. But if you read his testimony on the whole, what he's talking about is the ability to do unique tasks, complex tasks, puzzle, things that are new. He goes through, and I can quote some of these I have here, the part of the brain that walks, that makes love, that drinks, turns the keys of the car, that makes a signature, doesn't shut down. If you give a person a puzzle, for instance, that's the part of the brain that shuts down. He equates cognition with social judgment, which is very different from consciousness. He confirms they can do a lot of things. People are capable of fairly complex tasks in a blackout period. They can interact with people, and he confirmed that that happened here. He just never suggested that Shuler was acting as a zombie, unaware, not responsible in some respect. Counsel knew that. Counsel said, I didn't think what he was going to testify to. Counsel said, I didn't think a blackout was unconsciousness. I think it should be implicit in Counsel's declaration that when he had those thoughts, he had talked to his own expert, his own expert, before putting him on the stand. I think there should be something implicit there that he talked to his expert and came to that same conclusion after talking to the expert. In other words, that what he was about to testify to wasn't unconsciousness. Also, on the issue of prejudice, there are two things here. One is the jury necessarily found a conscious disregard for others in convicting Shuler. That can't coincide with a finding of unconsciousness. Judge Levy, I think you asked about that. I believe you can have a consciousness defense on a claim like this, but you can't have a finding of conscious disregard and a finding that the defendant was unconscious. That can't be reconciled, and there's no California law suggesting that it can be reconciled. The finding on one, I think, necessarily negates the other. The other aspect of this is the instruction, which is Calgic 4.21, and that is that the jury was told that it could consider Shuler's drinking on the issue of whether he formed malice. And even under Dr. Globus' testimony, if you assume his testimony is correct, he described a spectrum, and he described the increase in drinking, the brain waves go down or the cognition goes down, what have you. Well, if the jury didn't think he drank enough to negate malice, I don't think, I don't see how they could find that he was unconscious, which is a lot farther down the road on the spectrum. Those two can't be reconciled either, and I think that is why the courts have consistently found that there wasn't any prejudice under these instructions given, that those two instructions necessarily reconciled the defense argument or the argument that Shuler is trying to make now. If I may digress here for a second on the articles, I see that I wrote this down here. Rule 5 requires the state to put in all portions of the record that it deems relevant. We, as counsel for a respondent, have never had those articles in our possession. Those were Shuler's articles at the trial court, and although the prosecutor probably received a copy in the trial court, but they've never been in our hands, and since that time the parties have relied on an abstract or a summary of those articles, which was prepared by Shuler also. Well, were they admitted to evidence, or did they get into the record somehow? My understanding is they were at the trial court, and they were transmitted to the Court of Appeals. The California Court of Appeals did review those as well as, I believe, the summary. Now, our argument isn't that Shuler stipulated to the summary in lieu of the articles, but the fact is the parties have relied on that summary, and that summary was Shuler's own summary. We didn't put the articles themselves in because they're quite voluminous, and we think that they're covered by the summary. Shuler could have put those in with his petition, could have put it in with his traverse, but he didn't. And I don't think the State can be faulted for that. We did not deem the articles themselves, as opposed to the summary, to be so relevant that it required us to put those in. Do you want to say something about ineffective assistance? Yes, Your Honor. On the instructions, the unconsciousness instruction, as I indicated earlier, counsel's declaration says that he says, I didn't consider a blackout to be unconsciousness. And I believe that implicit in that is that he talked to the expert before arriving to that conclusion. He never says he didn't understand unconsciousness or that he didn't understand what evidence he was going to put on or that he didn't understand what Dr. Globus was about to testify to. That's all supposition here. Counsel's declaration is perfectly consistent with what the courts have found, that what Dr. Globus testified to and the evidence that was presented didn't amount to unconsciousness. And no prejudice for the reasons also that there wasn't supporting evidence and the instructions that I talked about earlier, the conscious disregard, and also the Calvary 4.21 eliminated the possibility of any prejudice. As far as objecting to the limiting instruction, the limiting instruction is there's nothing wrong with that limiting instruction. The jury knew, looking at the instructions as a whole, that the act had to be simultaneous with the intent, that the issue was conscious disregard while driving. And the fact of the matter is, if he had this knowledge, he had this knowledge while he was drinking, he had it while he was driving, and he had it however many years back when he got the last conviction. The jury was aware that this knowledge existed over a large time span. What's more important is that they knew that the intent had to meet the act, and they knew that under various instructions. And you look at the instructions as a whole, the jury couldn't have been confused that it was thinking about, somehow thinking about his malice or the formation of malice when he took the first drink. There likewise is no suggestion that he maybe had malice and that dissipated somehow in the minutes or hours before running into the victim. The jury just simply wouldn't have been misled on that. I do not have any further comment. I would be happy to answer any questions, though, on these issues or the venue issue as well. Well, now this has been identified. What is the first case in the county to deal with vehicular homicide as a second-degree murder? Honestly, I don't know if that was the first in Humboldt County. I know there were prior vehicular homicides. I don't know if those were murder twos. And are there a number of California cases on this subject? Because it seems to be a twist of irony that the drunker a person can prove that he is, the better his defense under California law. I guess that's the status of it, right? Well, there is a Calgary instruction on unconsciousness in the context of vehicular homicide. So it is, to a person's accused, to the accused's advantage to outdo the state in proving how drunk he was, right? That's correct, Your Honor. And it is a fairly perfunctory defense in these cases. As to whether there is case law on this, there is case law on the acceptance of a murder two under these circumstances. How much there is on the issue of unconsciousness under these circumstances, I don't know. I do know there is a Calgic on point. No further questions, counsel. Thank you. Mr. Lowe, you still have some reserve time. Just to be clear, in counsel's declaration, he doesn't say he didn't consider a blackout as unconsciousness. He says, I did not consider the possibility that such a blackout as a state of unconsciousness constituted a partial defense of the element of malice necessary to conviction of the charge of second-degree murder. I did not request instructions on unconsciousness, nor did I argue unconsciousness as a partial defense to the jury. I did not make a tactical decision not to raise the issue of unconsciousness. Rather, I did not consider the defense of unconsciousness. The State has been misrepresenting that all along the way. And that declaration is not the end of the matter. It is sufficient to establish ineffective assistance in this case. But there's more. We've never been given a hearing so that we can examine this guy and demonstrate the fullness of his incompetence on both the IAC, on jury selection, I mean, on the venue, on jury selection, on everything, on the defense, everything. We haven't gotten the evidentiary hearing. Now, Dr. Gulbis did say that everything that the State is relying on to show unconsciousness was consistent with a blackout. If blackout is unconsciousness, which is either accepted on the record or we should get an evidentiary hearing on the point, then Dr. Gulbis' testimony rejects everything the State court, the State, and the district court has relied on. I have not been relying on the abstract. I've been using it because it's all I had. I have been trying to get the actual exhibits to the court. Since the Traverse motion to expand the record, I've brought it up at every step that I could. Counsel, your time has expired. Thank you. Thank you very much. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Leavy